**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Darrell D. Prouty,                                    Case No. 20-CV-928 (WMW/DTS)

      Plaintiff,

v.                                                            **REPORT AND RECOMMENDATION**

Department of Human Services et al.,

      Defendants.

---

This action comes before the Court on Plaintiff Darrell D. Prouty's (1) pleading filed on October 8, 2020, ECF No. 30 ("Second Amended Complaint"); and (2) Application to Proceed in District Court Without Prepaying Fees or Costs, ECF No. 2 ("IFP Application"). For the following reasons, the Court recommends dismissing this action and denying the IFP Application as moot.

I.      **BACKGROUND**

    A.      **Procedural History**

By way of background, the Court briefly recounts this action's relevant procedural history before Prouty filed the Second Amended Complaint. Prouty is a client of the Minnesota Sex Offender Program ("MSOP"). *See, e.g.*, Second Am. Compl. 13.[1] He began this action by filing the IFP Application and an untitled six-page document; the Court received these on April 13, 2020. *See* IFP Appl.; ECF No. 1 ("Initial Filing"). The Initial Filing did not have a traditional pleading's earmarks, but did discuss certain MSOP-related complaints and suggested that MSOP be abolished. *See* Initial Filing 1–5.

---

[1] Citations to Court filings use the page numbers provided by the Court's CM/ECF filing system.

On April 22, 2020, Prouty filed a document captioned "Civil Complaint Pursuant to Title 42 U.S.C. § 1983." ECF No. 4 ("Complaint"). As this Court has previously observed, *see* Order 1–2, ECF No. 18 ("July 2020 Order"), this better resembled a standard pleading, but was incomplete in certain ways. Of particular note, the Complaint "list[ed] numerous individual defendants that go undiscussed in the Complaint's factual allegations—meaning that Prouty has provided no hint as to how these defendants purportedly violated the law or infringed on Prouty's rights." *Id.* at 2 (citing Compl. 11, 14–18). After filing the Complaint, Prouty filed almost a dozen letters, many of which "purport[ed] to provide more facts in support of Prouty's suit, or to make additional arguments about MSOP conditions." *Id.* (citing letters).

Facing this paperwork, the Court ordered Prouty to file a First Amended Complaint "presenting his claims and relevant allegations in one document and in a clear, concise, organized fashion." *Id.* at 3. The Court explicitly stated that the First Amended Complaint must "include a complete and coherent description of the historical facts on which Prouty's lawsuit is based"; "must identify clearly each individual defendant that Prouty intends to sue, describe what he or she did that was unlawful, and explain how that defendant's action or inaction violated Prouty's rights"; and, "to the extent that Prouty claims that individual defendants violated his constitutional rights, . . . must . . . indicate the capacity in which Prouty intends to sue each individual defendant." *Id.* The Court warned Prouty that if his future pleading did not follow the Court's instructions, the Court would recommend dismissing this action. *Id.* (citing authorities).

Prouty proceeded to file at least four more proposed amended complaints and six more letters to the Court. *See* Order 2, ECF No. 29 ("September 2020 Order") (discussing filings). These filings did not fix the problems that the July 2020 Order identified. *See id.* at 3 n.1 (discussing this point).

Facing Prouty's new stack of filings, the Court noted its earlier warning and stated that "it would be squarely within this Court's discretion to recommend dismissal now." *Id.* at 3. But the Court instead ordered Prouty to file a Second Amended Complaint. *Id.* The Court gave Prouty the same explicit instructions provided by the July 2020 Order. *See id.* at 3–4. The Court also noted that Prouty had failed to sign many of his earlier filings, and so specifically indicated that he must sign the Second Amended Complaint. *See id.* at 4 & n.2. And the Court warned Prouty—again—that if his future pleading did not follow the Court's instructions, the Court would recommend dismissing this action. *See id.* at 4. Finally, the Court ordered the Clerk of Courts not to accept for filing "any document . . . except one compliant with this Order." *Id.* at 5.

### B.   Second Amended Complaint

On October 8, 2020, the Court received a thirteen-page filing from Prouty. *See generally* Second Am. Compl.[2] Its caption lacks a title, *see id.* at 1, but it resembles a traditional pleading, and the Court construes it as Prouty's Second Amended Complaint. The document is unsigned. *See id.* at 13 (presenting end of document; lacking signature block of any sort). The document names as plaintiffs not merely Prouty, but all present MSOP clients. *See id.* at 5. It names as defendants the Minnesota Department of Human Services ("MN DHS"), the MSOP itself, and over ninety individual defendants. *See id.* at 1, 5–12. Each individual defendant appears to be associated with either MN DHS and/or MSOP. *See id.* at 5–12. For the various individual defendants, there is no indication

---

[2] Within a day or two after Prouty submitted the Second Amended Complaint, he submitted another filing. After review, the Court instructed the Clerk of Court not to accept that filing—it did not comply with the September 2020 Order and gave no hint about how it related to the Second Amended Complaint.

whether Prouty seeks to sue them in their individual capacities, their official capacities, or both.  *See id.*

The Second Amended Complaint has two paragraphs that apparently contain the pleading's main factual allegations.  *See id.* at 6–7, 12–13.  These do not mention any of the individual defendants.  *See id.*  Instead, they present a fulsome list of general complaints about MSOP conditions.  In one, for instance, Prouty states that MSOP "has failed in every sense of the word to provide adequate treatment" (presumably to MSOP clients), has "failed to cooperate with State and Federal standards for the ethical treatment of clientele within a residential treatment facility," and treats MSOP clients like "[criminals] within a reinvented Nazi concentration/internment camp."  *Id.* at 6–7.  The other paragraph is hard to follow, but Prouty apparently contends that authorities govern MSOP like a program within the Minnesota Department of Corrections, rather than as a program to rehabilitate sexual offenders.  *See id.* at 12–13.

For relief, Prouty asks that all "excessively punitive [measures] cease and desist," that he be "released from custody immediately," and that he be awarded $2.5 billion in damages.  *Id.* at 4–5.  With respect to release, there is some confusion: at one point Prouty appears to seek outright release, while elsewhere he asks the Court to place him into a sex-offender-treatment program in Wisconsin.  *Compare id.* at 4 *with id.* at 13.

## II.   ANALYSIS

### A.   Second Amended Complaint

1.   Screening standards

Prouty did not pay this action's filing fee; he instead filed for in forma pauperis ("IFP") status.  *See generally* IFP Appl.  In cases in which the plaintiff seeks IFP status, 28 U.S.C. § 1915(e)(2)(B)(i) specifies that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court

determines that . . . the action or appeal . . . is frivolous or malicious[.]"   And while § 1915(e)(2) uses the phrase "the case," judges also use it to dismiss frivolous portions of cases.  *See, e.g.*, *Proffit v. Rowley*, 44 F. App'x 748, 748 (8th Cir. 2002) (affirming district court's preservice denial of most of complaint as frivolous, but remanding certain claims back to district court); *Cota v. Dir. of Nat'l Sec. Agency*, No. 15-CV-2089 (ADM/JSM), 2015 WL 6737008, at *2–3 (D. Minn. Nov. 3, 2015) (adopting report and recommendation dismissing some, but not all, claims in action as frivolous).

Furthermore, under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."   Rule 12(h)(3) speaks of dismissing "the action," but again, courts routinely use the rule to dismiss portions of actions where jurisdiction is lacking.  *See, e.g.*, *Chernin v. United States*, 149 F.3d 805, 813–14 (8th Cir. 1998); *In re Polaris Mktg., Sales Practices, and Prod. Liab. Litig.*, 364 F. Supp. 3d 976, 982–84 (D. Minn. 2019).

2.    Discussion

a.    *Lack of signature*

As a threshold point, whatever the Second Amended Complaint's merits, the Court cannot use it as the basis for this action.  Notwithstanding the September 2020 Order's warning, Prouty did not sign the Second Amended Complaint.  *See* Sept. 2020 Order 4; Second Am. Compl. 13.   As the Court explained before, under Rule 11 of the Federal Rules of Civil Procedure, "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented," and "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."

Because the Court specifically warned Prouty about his consistent refusal to sign prior pleadings, and specifically ordered him to sign the Second Amended Complaint, it

would be within this Court's discretion to dismiss this action for failure to comply with a court order. *See, e.g.*, Fed. R. Civ. P. 41(b); *Henderson v. Renaissance Grand Hotel*, 267 F. App'x 496, 497 (8th Cir. 2008) (per curiam) ("A district court has discretion to dismiss an action under Rule 41(b) for a plaintiff's failure to prosecute, or to comply with the Federal Rules of Civil Procedure or any court order."). Because the Court reaches the same dismissal recommendation without merely relying on this procedural ground, it will not recommend dismissal based on Prouty's failure to sign. In other actions, however, Prouty should be aware of—and comply with—the signature requirement.

> b.   Class claims

As noted above, the Second Amended Complaint purports to bring claims on behalf of all MSOP clients, not just Prouty. *See* Second Am. Compl. 5. This is a nonstarter. It is well established that nonlawyers cannot represent other entities or people in federal court. *See, e.g.*, *United States v. Mengedoht*, 790 F. App'x 841, 841–42 (8th Cir. 2020) (citing *Knoefler v. United Bank of Bismarck*, 20 F.3d 347, 348 (8th Cir. 1994)); *Ziegler v. U.S. Dep't of Transp.*, No. 16-CV-3824 (JNE/SER), 2018 WL 5067374, at *1 n.2 (D. Minn. Sept. 18, 2018) (citing authorities), *report and recommendation adopted*, 2018 WL 5045774 (D. Minn. Oct. 17, 2018).

As a result, Prouty can at most represent himself in this action; he cannot represent other MSOP clients. The Court therefore recommends dismissing the Second Amended Complaint as to any claims that Prouty seeks to bring for other MSOP clients. Because there is no feasible way for Prouty to fix this problem in the future, the Court further recommends dismissing these claims with prejudice.

> c.   Claims against MN DHS and MSOP

The Court next turns to Prouty's claims against two entities: the MN DHS and MSOP. *See* Second Am. Compl. 1. The MN DHS is a state agency; MSOP is a program

that MN DHS "establish[es] and maintain[s]."  Minn. Stat. § 246B.02.  Both entities, then, are state agencies or instrumentalities.  This raises the question of whether state sovereign immunity under the Eleventh Amendment bars some or all of Prouty's claims.

Under the Eleventh Amendment, "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ."  U.S. Const. amend. XI.  Notwithstanding the phrase "another State" here, precedent establishes that "'an unconsenting State is immune from suits brought in federal courts *by her own citizens as well as by citizens of another state.'"  *Fryberger v. Univ. of Ark.*, 889 F.3d 471, 473 (8th Cir. 2018) (emphasis added) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)).  The issue is jurisdictional: under the Eleventh Amendment, federal courts generally lack subject-matter jurisdiction over claims against an unconsenting state.

Here, of course, the Second Amended Complaint does not name the State of Minnesota itself, but the MN DHS and MSOP.  For Eleventh Amendment purposes, the distinction does not matter; state sovereign immunity also applies to agencies and instrumentalities acting under a state's control.  *See, e.g.*, *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (citing cases); *Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) (citing *N. Ins. Co. v. Chatham Cty.*, 547 U.S. 189, 193 (2006)).  The Second Amended Complaint gives no indication that Minnesota has consented in any way to Prouty's suit against the MN DHS or MSOP, and the Court is unaware of any applicable waiver or other act expressing such consent.  This Court thus lacks subject-matter jurisdiction over Prouty's claims against those state entities.  The Court recommends dismissing those claims without prejudice.

7

d.    *Claims against individual defendants*

What remains are Prouty's claims against dozens of individual defendants.  As a first issue, the Court must determine the capacity in which Prouty is suing these defendants.  Suits against state actors alleging constitutional-right violations generally proceed as claims under 42 U.S.C. § 1983, and against individual defendants, such claims proceed as either individual-capacity claims, official-capacity claims, or both.  In this case, the Second Amended Complaint—notwithstanding this Court's specific instructions to Prouty, *see* July 2020 Order 3; Sept. 2020 Order 4—says nothing about the capacity in which Prouty is suing the individual defendants.  In the Eighth Circuit, when a plaintiff fails to specify the capacity in which he sues an individual defendant, a district court treats the relevant claims as official-capacity claims.  *See, e.g.*, *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007); *Spottswood v. Washington Cty.*, No. 19-CV-1331 (MJD/ECW), 2020 WL 4340519, at *5 & n.16 (D. Minn. June 10, 2020) (citing cases), *report and recommendation adopted*, 2020 WL 4339015 (D. Minn. July 28, 2020).  The Court therefore treats Prouty's claims against the individual defendants as official-capacity claims.

Caselaw is clear that § 1983 official-capacity claims against individual state officials are, in effect, claims against the state itself.  *See, e.g.*, *Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017) (citing cases); *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) (quoting *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006)).  Construing Prouty's claims against the individual defendants as official-capacity claims therefore means that these are simply claims against the State of Minnesota.  For the same reasons given above concerning the MN DHS and MSOP, this Court—with an important exception for claims seeking prospective injunctive relief—lacks jurisdiction over Prouty's individual-

8

defendant claims. The Court thus recommends dismissing Prouty's damages claims against the individual Defendants without prejudice for lack of subject-matter jurisdiction.

As for that exception: Under the doctrine established in *Ex parte Young*, the federal courts have jurisdiction where a plaintiff sues a state official in his or her official capacity for prospective injunctive relief and claims that the official is violating the Constitution or federal law. 209 U.S. 123 (1908); *see also, e.g.*, *Mo. Child Care Ass'n v. Cross*, 294 F.3d 1034, 1037 (8th Cir. 2002) (citing *Ex parte Young*). This Court thus does have jurisdiction over Prouty's official-capacity claims against the individual defendants, to the extent he seeks injunctive relief to prevent ongoing constitutional-law violations.

But even though the Court has jurisdiction over this limited set of claims, the Court still recommends dismissing them, for they are frivolous. A case is frivolous when "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Day v. Minnesota*, No. 19-CV-0496 (WMW/LIB), 2019 WL 3371132, at *2 (D. Minn. July 26, 2019) (quoting *Neitzke*). When a complaint lacks any allegations explaining what a given defendant did that generates legal liability, the complaint lacks an arguable basis in fact as to that defendant. *See, e.g.*, *Radabaugh v. Corp. Tr. Co.*, No. 17-CV-1559 (JRT/BRT), 2017 WL 8944024, at *4 (D. Minn. May 22, 2017), *report and recommendation adopted*, 2017 WL 4023102 (D. Minn. Sept. 13, 2017).

The Second Amended Complaint does not have a single specific allegation about any of the dozens of individuals named as defendants. As to those defendants, then, the Second Amended Complaint is frivolous. The Court thus recommends dismissing the Second Amended Complaint without prejudice with respect to the individual defendants.

### B.    IFP Application

Because the Court is dismissing the Second Amended Complaint—and this action—the Court also recommends denying the IFP Application as moot.

### RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1.    Plaintiff Darrell D. Prouty's pleading filed on October 8, 2020, ECF No. 30—the "Second Amended Complaint"—be **DISMISSED** with prejudice to the extent it seeks to bring claims on behalf of people other than Prouty.

2.    The rest of the Second Amended Complaint be **DISMISSED** without prejudice.

3.    Prouty's Application to Proceed in District Court Without Prepaying Fees or Costs, ECF No. 2, be **DENIED** as moot.

Dated: October 20, 2020                    _s/David T. Schultz_____
                                                    DAVID T. SCHULTZ
                                                    U.S. Magistrate Judge

### NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).